UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

REPUBLIC BANK & TRUST COMPANY,                                   PLAINTIFF

v.                                                                                CIVIL ACTION NO. 3:09-CV-287-S

BEAR, STEARNS & CO., INC., et al.,                                   DEFENDANTS

## **MEMORANDUM OPINION**

In 2003 and 2006, Republic Bank & Trust Company bought from Bear Stearns several securities that it now recognizes to be, in the parlance of our times, "toxic assets." Republic admits to not reading the relevant prospectuses prior to its purchases, but it has nevertheless sued Bear Stearns, its parent companies, and an employee for fraud, negligent misrepresentation, and violations of Kentucky's Blue Sky Law. The defendants now move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons that follow, we will grant that motion in full.

**I**

The following facts are drawn from the face of the complaint (the allegations of which we must take as true for present purposes), as well as the prospectuses and prospectus supplements ("prosupps") (collectively, the "offering documents") for the securities in question.[1] Bear, Stearns & Company ("Bear Stearns"), a wholly-owned subsidiary of The Bear Stearns Companies ("Bear Stearns Companies"), employed Frederick W. Barney, Jr. as a senior manager. In that role, Barney solicited the business of Republic Bank & Trust Company ("Republic") and convinced it to purchase several residential-mortgage-backed securities. Specifically, on March 31, 2003, Bear Stearns sold

---

[1] While the offering documents were not attached to the complaint, the defense has attached copies to its motion to dismiss. The offering documents are referenced pervasively in the complaint and are central to Republic's claims. They are therefore considered part of the pleadings and are a proper basis for our decision on this motion. *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997).

Republic a number of mortgage pass-through certificates issued by ABFS Mortgage Loan Trust 2003-1 for $20 million. Then on October 2, 2006, Republic bought from Bear Stearns additional mortgage pass-through certificates, issued by Bear Stearns ALT-A Trust 2005-10, Bear Stearns ARM Trust 2006-2, Bear Stearns ARM Trust 2006-4, and IndyMac INDX Mortgage Loan Trust 2006-AR11, for a total price of more than $32 million.

There are two reasons an investor might buy this particular sort of asset (which was not labeled "toxic" until years after these securities were issued). Primarily, the holder of a pass-through certificate is entitled to a monthly distribution of principal and interest as homeowners make payments on the mortgage loans that underlie the security. Alternately, one might buy a mortgage-backed security with the expectation that its market value will appreciate, allowing the holder to sell it for a profit at some future date. Republic does not allege that the stream of income from any of the securities has been unexpectedly low. Nor does it claim that it sold the certificates, or that it attempted to do so. Rather, it complains that because it held the certificates on its balance sheet and was required to revise their value to reflect market prices, it recorded on-paper losses of some $14.2 million as of December 31, 2008. Basically, the certificates are not now worth as much as Republic expected they would be.

This decline in nominal value is not in Republic's view solely the fault of the recent global financial crisis and ensuing recession. Instead, the bank alleges that Bear Stearns, through Barney, made a series of misrepresentations and omissions in the run-up to its decisions to buy the securities, and that but for those misrepresentations it would not have bought the certificates and thus would not have had to write down the value of its assets. Thus it sued Bear Stearns, its salesman (Barney), its former parent (Bear Stearns Companies), and its new parent (JP Morgan Chase & Co., which

bought the Bear Stearns Companies in March 2008), seeking to hold them responsible for deceiving Republic into buying now-troubled financial products. The defendants removed the case from the Jefferson Circuit Court, asserting diversity of citizenship under 28 U.S.C. § 1332, and moved to dismiss the complaint (for failure to state a cognizable claim) without answering it.

## II

The Supreme Court has recently revised its understanding of the pleading standards under the Civil Rules. A complaint now "only survives a motion to dismiss if it 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009) (*quoting Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)). This raises the bar from where *Conley v. Gibson*, 355 U.S. 41 (1957) had left it: Whereas under *Conley* a court was to dismiss a facially well-pleaded complaint only if its contents were so outlandish as to be utterly incapable of proof, *Iqbal* (along with its predecessor, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)) advises us to toss out a case unless the allegations meet some minimum standard of plausibility. *Courie*, 577 U.S. at 629-30. While we must take the complaint's factual allegations as true in making this assessment, we need not accept the truth of legal conclusions or draw unwarranted factual inferences. *DirectTV, Inc.* 487 F.3d 271, 476 (6th Cir. 2007); *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000).

A claim of fraud or mistake creates a "high risk of abusive litigation," *Twombly*, 550 U.S. at 569 n.14, and therefore must satisfy a still more stringent pleading standard under Fed. R. Civ. P. 9(b). At a minimum, the complaint must (1) specify the allegedly fraudulent statements, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. *Ind. State Dist. Council of Laborers v. Omnicare, Inc.*, 583 F.3d 935,

943 (6th Cir. 2009); *Frank v. Dana*, 547 F.3d 564, 570 (6th Cir. 2008). And while mental states "may be alleged generally," Fed. R. Civ. P. 9(b), the allegations "must be made with sufficient particularity and with a sufficient factual basis to support an inference that they were knowingly made." *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993); *Our Lady of Bellefonte Hosp., Inc. v. Tri-State Physicians Network, Inc.*, 2007 U.S. Dist. LEXIS 72286, at *16 (E.D. Ky. Sept. 27, 2007). With these standards in mind, we turn to the allegations of the complaint.

### III

### A

Count I is titled "Fraud and Deceit," and contains two distinct causes of action: fraud by misrepresentation and fraud by omission. At the outset, we consider the argument that Republic has failed to plead that the defendants caused them harm. We think this essential element, common to both torts, is sufficiently pleaded here. Republic's position, as the court understands it, is that it would not have purchased the securities in question, and therefore would not have had to take any write-downs, if the defendants had told it the whole truth and nothing but the truth prior to selling it the certificates. That is good enough at this stage. *See* Restatement (Second) of Torts § 548A (1977) ("A fraudulent misrepresentation is a legal cause of a pecuniary loss resulting from action or inaction in reliance upon it if, but only if, the loss might reasonably be expected to result from the reliance.") With that question settled, we address the allegations of fraud in turn.

### 1

Common-law fraud in Kentucky requires proof of six elements: (1) that the declarant (the defendant or its agent) made a material representation to the plaintiff; (2) that this representation was false; (3) that the declarant knew the representation was false or made it with reckless disregard for

its truth or falsity; (4) that the declarant intended to induce the plaintiff to act upon the misrepresentation; (5) that the plaintiff reasonably relied upon the misrepresentation; and (6) that the misrepresentation caused injury to the plaintiff. *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009) (*citing McHargue v. Fayette Coal & Feed Company*, 283 S.W.2d 170 (Ky. 1955) (requiring reasonable reliance); Restatement (Second) of Torts § 537 (1977) ("justifiable" reliance)); *United Parcel Service Company v. Rickert*, 996 S.W.2d 464 (Ky. 1999). The misrepresentation in question "must relate to a past or present material fact." *Flagles*, 289 S.W.3d at 549. A statement of opinion or prediction about investment prospects or future sales performance generally cannot form the basis of a fraud claim. *Id.*; *McHargue*, 283 S.W.2d at 172. Kentucky recognizes an exception to this rule against predictions where the proffered opinion "either incorporates falsified past or present facts or is so contrary to the true current state of affairs that the purported prediction is an obvious sham," but an experienced institutional investor like Republic nonetheless remains under a duty to exercise "common sense" to protect itself. *Flagles*, 289 S.W.3d at 549. "'[M]ere commendation, or even false representation by the seller of stock as to its value, when the purchaser has an opportunity to ascertain for himself such value by ordinary vigilance or inquiry, has no legal effect on the rights of the contracting parties, even when made with the intention to deceive.'" *Id.* (*quoting Ky. Elec. Dev. Co.'s Receiver v. Head*, 68 S.W.2d 1, 3 (Ky. 1934)). The exception is limited to cases where the defendant has misrepresented objective data or its own present intentions; "'forward-looking recommendations and opinions are not actionable . . . merely because they are misguided, imprudent or overly optimistic.'" *Id.* (*quoting In re Salomon Analyst AT&T Litig.*, 350 F.Supp.2d 455, 467 (S.D.N.Y. 2004)). The complaint contains three subjects on which the defendants allegedly made false statements.

*a.* *"Reasonably Safe Investment Products"*

Republic complains that "[d]efendants represented that the certificates were reasonably safe investment products backed by mortgage loans made according to reasonably prudent underwriting standards." (Compl. ¶ 32.a.) This allegation fails. We agree with the defense: to say that an investment is "reasonably safe" or that it was based on "reasonably prudent" mortgages is only to offer an opinion, from which no fraud action can originate. Whether something is reasonably safe is an inherently subjective question. Different investors have different levels of tolerance for risk and uncertainty, so whether an investment is "reasonable" or a loan is "prudent" will depend on an individual's strategy and preferences. This is something that each investor must assess for himself. Bear Stearns, we now know, had an unusually high risk tolerance. This earned it huge returns on its investments, but also led to a precipitous collapse two years ago. It apparently thought its investments were reasonable, and was willing to accept the risk of loss. If it told Republic that the investment products were reasonably safe, it can only have been expressing its opinion. Republic cannot expect another party to take Republic's subjective assessment of its own risk-averseness into account in discerning whether or not a product is "reasonably safe." To make out an actionable fraud claim, Republic would have had to allege a statement like, "Barney told us there was only a 10% chance of a write-down, but we later learned that there was in fact a 75% chance of a write-down." It has not done anything like that, and its allegations are therefore insufficient. They will be dismissed.

*b.* *Intent to Make a Secondary Market*

Paragraph 32.h alleges that "Bear Stearns stated in the prospectuses or prospectus supplements that it intended to make a secondary market for the certificates," but that in fact it

lacked the ability to do so due to its own financial weakness. We are told that this is relevant, notwithstanding Republic's admission that it "did not have or review the offering documents until after it purchased the certificates," because it "relied upon [the offering documents] in continuing to hold the certificates." (Resp. 2.) This argument comes close to disproving itself. If Bear Stearns *intended* to *create* a secondary market for the certificates, we can suppose that no such market existed at the outset, and that therefore by the time Republic read the offering documents it was already too late for it to "choose" to hold the certificates. Absent a secondary market, it could not have readily sold them if it had wanted to.

But set that aside; perhaps Republic could have found a buyer on its own. Its claim nonetheless fails because an alleged "intent" to do something is not an actionable statement. It is not a "past or present material fact," *Flagles*, 289 S.W.3d at 549, but rather a forward-looking statement about what a party may do in the future. *See Our Lady of Bellefonte Hosp., Inc. v. Tri-State Physicians Network, Inc.*, 2007 U.S. Dist. LEXIS 72286, at *17 (E.D. Ky. Sept. 27, 2007) (stating that a representation of intent to take certain actions cannot form the basis for fraud "because predictions for future conduct do not constitute actionable fraud" (c*iting Livermore v. Middlesborough Town-Lands Co.*, 50 S.W. 6 (1899))). Furthermore, the prosupps amply warn of the possibility that Bear Stearns would be incapable of following through on its intention, and expressly disclaim any obligation to do so.[2] (*See* Def.'s Exs. 3 at S-19; 5 at S-19, S-98; 7 at S-16; 9 at S-17; 11 at S-23.) So even if the intentions were statements of fact, Republic could not have reasonably relied on them. It cannot prove fraud.

---

[2] For this reason we will also dismiss Republic's allegation that Bear Stearn failed to state that its financial weakness precluded creation of a secondary market.

*c.     Credit Enhancement*

Republic asserts that the offering documents promised that the certificates would be the beneficiaries of credit enhancement; that is, timely distribution of principal and interest (as appropriate) was guaranteed. These promises, Republic alleges, were "illusory" and therefore fraudulent "because of the poor quality of the underlying mortgage loans."[3] (Compl. ¶¶ 32.i-.j.) It again claims to have relied on the provision of credit enhancement only in deciding to hold onto the certificates. But as the defense points out, the offering documents clearly explain that the offered credit enhancement was at risk of being "depleted" or "exhausted" and that therefore the security-holder bore a significant risk of loss. (*See* Def.'s Exs. 2 at 5; 3 at S-15, S-16; 5 at S-19; 7 at S-12, S-16; 9 at S-12, S-17; 11 at S-21.) The offering documents informed Republic of precisely the risk they now claim to have been misled about. If the documents contained false statements (we do not think they did in light of this qualifying language), Republic could not reasonably have relied on them. This claim will therefore be dismissed.[4]

**2**

Count I also alleges several instances of fraud by omission, a tort requiring proof of four elements: (1) that the defendant had a duty to disclose a material fact; (2) that the defendant failed to disclose that fact; (3) that the defendant's failure to disclose the fact induced the plaintiff to act; and (4) that the plaintiff suffered actual damages. *Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*,

---

[3] Republic also alleges that the credit enhancement supplied by Radiant Asset Assurance on the ABFS Mortgage Loan Trust 2003-1 certificates was illusory "because of Radiant's heavy involvement in insuring collateralized debt obligations and asset-backed securities," which have caused downgrades in its financial strength ratings. (Compl. ¶ 32.i.)

[4] Republic also asserts (for the first time) in its response brief that "Mr. Barney discussed the financial guaranty insurance for the 2003 certificates with Republic prior to Republic's purchase of the certificates and Republic relied upon it in purchasing them." (Resp. 15.) This allegation is not properly before the court, and we do not address it here.

113 S.W.3d 636, 641 (Ky. Ct. App. 2003) (*citing Smith v. General Motors Corp.*, 979 S.W.2d 127 (Ky. 1998)). The gravamen of the tort is breach of a duty to disclose, such that the plaintiff is injured by relying on the defendant to have fulfilled his duty. Again, however, the plaintiff's reliance must have been reasonable; he still must exercise common sense to protect himself. *See Mayo Arcade Corp. v. Bonded Floors Co.*, 41 S.W.2d 1104, 1109 (Ky. 1931); *Cincinnati Ins. Co. v. Hofmeister*, 2008 Ky. App. LEXIS 313 at *70 (Ky. Ct. App. Oct. 17, 2008) (requiring reasonable reliance for proof of either fraudulent concealment or fraudulent misrepresentation). Specifically, if a party could have learned of the basis of the fraud, or if he could have uncovered it "by ordinary vigilance and attention," his failure to do so deprives him of a remedy. *Mayo Arcade*, 41 S.W.2d at 1109 (citation omitted). Similarly, if a plaintiff had a chance to read a material document but declined to do so because of the defendant's statements, he is charged with knowledge of its contents. *Id.* We address the alleged omissions in turn.

a.      *Failure to State that Prudent Underwriting Standards were not Followed*

Paragraph 32.b alleges that Bear Stearns and Barney failed to inform Republic that a substantial number of the loans underlying the certificates were made without regard for "prudent underwriting standards." This fails to allege an omission of fact. "Prudence," like "reasonableness," is an inherently subjective characteristic involving foresight and sound judgment. A person's determination whether an investment is prudent or not depends on his own assessment of objective data in light of a host of personal preferences as to risk, uncertainty, and so forth. Had Barney told Republic that "Yes of course prudent underwriting standards were followed," we would have no way of evaluating the truth or falsity of that statement as an objective matter. For the same reason, his

alleged failure to make such a statement (or its inverse) cannot form the basis of actionable fraud-by-omission.

Paragraph 32.d is a somewhat different matter. It asserts that a substantial number of the underlying loans were issued to borrowers whose creditworthiness was either insufficiently examined or did not support the amounts of the loans, but that the defendants failed to inform Republic. Although they contain an element of subjective assessment as well, these accusations are somewhat more susceptible of empirical verification than the assertion that some loans were "imprudently" made. We therefore think there is a sufficient allegation of an omission of fact. Defendants attack them on the ground that, in light of the offering documents, Republic could not reasonably have relied only on Barney's statements as containing all there was to know about the securities it was buying. With respect to the four sets of securities purchased in 2006, we agree with the defense. All the offering documents for those securities were filed and publicly available in advance of Republic's purchase.[5] Republic could have and should have inspected them carefully to learn exactly what it was buying. Had it done so, it would have learned that some of the loans in ALT-A Trust 2005-10 were "ineligible for purchase by Fannie Mae or Freddie Mac" because of the mortgager's "credit characteristics"—i.e. his bad credit—or because of "documentation standards in connection with the underwriting of the related mortgage loan that do not meet . . . underwriting guidelines for 'A' credit mortgagors"—i.e. substandard examination of creditworthiness. (Def.'s Ex. 5 at S-22.) The next sentence warns that some mortgagors's creditworthiness did not meet usual guidelines, because of a record of credit write-offs, outstanding judgments, and prior bankruptcies. The one after that warns that some mortgagors "provide[d] limited or no documentation in

---

[5] The relevant prospectus supplements were filed on the following dates: Bear Stearns ALT-A Trust 2005-10 (December 29, 2005); Bear Stearns ARM Trust 2006-2 (May 26, 2006); Bear Stearns ARM Trust 2006-4 (September 28, 2006); IndyMac INDX Mortgage Loan Trust 2006-AR11 (May 2, 2006).

- 10 -

connection with the underwriting of the related mortgage loan." The prosupps for the other 2006 purchases provide similar warnings. (*See* Def.'s Exs. 6 at 12; 7 at S-36-43, S-48, S-51; 8 at 13; 9 at S-42-48, 50; 11 at S-57-58.) In light of the offering documents, Republic's asserted reliance on Barney's statements as being a full account of the relevant information regarding these securities was unreasonable as a matter of law, and it has therefore stated no claim with respect to the 2006 purchases.

The one batch of certificates purchased in 2003 is slightly but importantly different. The prospectus supplement with respect to the ABFS Trust 2003-1 was filed on March 31, 2003—the same day on which Republic bought the securities, and Republic avers that Barney never provided it with advance copies. A plaintiff cannot be fairly charged with constructive knowledge of the contents of a document it had no reasonable opportunity to review. Republic can, however, be charged with discovering those contents (either actually or constructively) once the documents were available to it. At this point the statute of limitations comes into play. The limitations period on fraud actions is five years from the date the fraud could have been discovered "in the exercise of ordinary diligence." KRS 413.120(12), 413.130(3); *Hernandez v. Daniel*, 471 S.W.2d 25, 26 (Ky. 1971). *See also, e.g.*, *Dixon v. Clem*, 492 F.3d 665, 671 (6th Cir. 2007); *Wiseman v. Alliant Hosps., Inc.*, 37 S.W.3d 709, 712 (Ky. 2000). Even granting Republic a few weeks or even months to exercise ordinary diligence in reading the offering documents once they became available, it should have become aware of the questions regarding the borrowers' creditworthiness long before March 20, 2004 (the cutoff date, five years before the filing of this complaint). Rule 9(f) makes allegations of time material in testing the sufficiency of a complaint. Consequently, a defendant may raise the statute of limitations on a 12(b)(6) motion to dismiss, which the court should sustain "when it is

apparent from the face of the complaint that the time limit for bringing the claim has passed." *Hoover v. Langston Equipment Associates, Inc.*, 958 F.2d 742, 744 (6th Cir. 1992) (*quoting* 5 Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1308 (2d ed. 1990)). We think it apparent that the time limit has passed, and will dismiss paragraph 32.d's claims related to the 2003 certificates.[6]

b.    *Failure to Disclose that Underwriting Standards were not Followed*

Republic next alleges that the originators of many of the mortgages in which they now have an interest did not follow their own underwriting standards in issuing some of those loans. (Compl. ¶ 32.c.) But the complaint contains no allegations on this subject that are in any way specific to the loans and securities involved in this case. Republic's unsupported allegations do not meet Rule 9(b)'s particularity requirements. Moreover, we think them implausible given that Bear Stearns disclosed the originators' lax lending standards and the fact that exceptions even from these lenient rules were permitted. (*See*, *e.g.*, Def.'s Exs. 5 at S-40; 9 at S-51.) The claim does not survive dismissal.

c.    *Unsound Property Valuation*

Paragraph 32.e alleges that defendants failed to disclose that the originators of many of the mortgage loans performed inaccurate and unsound valuations of the properties involved, thereby leaving the mortgages inadequately secured. But again, there is nothing in the complaint alleging anything wrong with the appraisals of the specific properties involved in this litigation. Republic

---

[6] As discussed below, statutes of limitations bar other claims related to the 2003 certificates as well. This bar, however, only applies at this stage of litigation where it is obvious that the papers were filed out of time; that is, where the complaint and associated documents make clear that Republic should have discovered its cause of action more than five (or, in the case of Count III, three) years before it filed the complaint. This will only be the case where the offering documents contain information that should have led to the discovery of the cause of action, so for the claims involving information omitted from both Barney's oral statements and the offering documents, the statute of limitations will not bar recovery as we have no information before us about when the alleged fraud should have been discovered.

relies instead on news articles and general statements about typical practices in the mid-2000s, but as another court has ably observed, "[t]hat questionable appraisal practices were a common problem in the industry as a whole, without more, tells nothing about the Trusts' underlying loans." *Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 658 F. Supp. 2d 299, 307 (D. Mass. 2009). Republic has not met Rule 9(b)'s particularity requirements. Furthermore, the offering documents specifically and repeatedly warn that Bear Stearns could offer no assurances that property values would remain where they were when the mortgages were originated, and that declines in home prices would weaken collateral coverage. (*See* Def.'s Exs. 2 at 7; 3 at S-42; 5 at S-28; 6 at 7; 7 at S-20; 8 at 8; 9 at S-22; 10 at 9; 11 at S-24.) Having been warned that the assessed values of the properties were subject to change in accordance with shifting economic conditions, Republic cannot be heard to complain that it was not warned that the original assessments were potentially "inaccurate"—i.e. in potential need of revision. As above, the offering documents compel the conclusion that the plaintiff cannot succeed as to either the 2003 certificates (expiration of the statute of limitations) or the 2006 certificates (fair warning and lack of reasonable reliance). The claims will be dismissed.

d.     *Predatory Lending*

Republic next alleges that the defendants failed to disclose that the originators of the underlying mortgages engaged in predatory lending practices. (Compl. ¶ 32.f.) We think it clear that they did, at least for the four sets of certificates sold in 2006. The offering documents all contain language stating that the loans are subject to various state and federal laws regarding predatory lending, and warning of the possibility that those laws may have been broken notwithstanding the originators' representations to the contrary. In the event of such violations, the offering documents

assure the investor, the originators are required to cure the breach or replace the defective loan.[7] (*See* Def.'s Exs. 5 at S-29-30; 7 at S-21-22; 9 at S-23; 10 at 36-37.) The defendants clearly warned of the possibility that the originators engaged in illegal behavior with regard to some of the loans involved. The claims involving the 2006 securities will therefore be dismissed.

Again, because the prosupp warning of this danger as to the ABFS Mortgage Loan Trust 2003-1 was not filed until the day Republic bought the securities, we cannot charge it with constructive notice prior to its purchase. We can, however, charge it with constructive discovery once the offering documents were available. As explained above, this means that the complaint was filed out of time with respect to the 2003 certificates on this charge, which we will accoedingly dismiss.

e.  *Unreasonable Risk of Default*

Republic next complains that the defendants did not inform it that the mortgages underlying its securities faced an "unreasonably high" risk of default. (Compl. ¶ 32.g.) But as discussed above, whether a risk is "prudent" or "reasonable" is a matter of judgment, not a matter of fact. The first element of the cause of action is not fulfilled, so it fails.

**3**

Republic also alleges that the defendants made misrepresentations and omissions to the rating agencies in order to obtain favorable ratings for their securities, and that Republic relied on those ratings to its detriment in deciding to buy the certificates. (Compl. ¶ 33.) But for the same reasons expressed above Republic has failed to allege any actionable fraud committed upon it via statements to the agencies. That portion of the complaint will be dismissed as well.

---

[7] There is no allegation that any individual loan has been found to have been predatorily issued, or that any such problem was not cured or replace per the terms of the offering documents.

## B

Count II of the complaint alleges negligent misrepresentation. Kentucky follows the Restatement in holding liable for pecuniary loss a person who, (1) in the course of his business or a transaction in which he has a pecuniary interest, (2) supplies false information for the guidance of others in their business transactions, if (3) he fails to exercise reasonable care or competence in obtaining or communicating the information and (4) the plaintiff justifiably relied on the information. *Presnell Constr. Managers, Inc. v. EH Constr., LLC*, 134 S.W.3d 575, 580 (Ky. 2004); Restatement (Second) of Torts § 552(1). Importantly, this tort requires an affirmative false statement; a mere omission will not do. *Associated Warehousing, Inc. v. Banterra Corp.*, 2009 U.S. Dist. LEXIS 54614 (W.D. Ky. June 24, 2009); *In re Nat'l Century Fin. Enters.*, 580 F. Supp. 2d 630, 646 (S.D. Ohio 2008) (*citing Leal v. Holtvogt*, 702 N.E.2d 1246, 1261 (Ohio Ct. App. 1998)); *Flanagan Lieberman Hoffman & Swaim v. Transamerica Life & Annuity Co.*, 228 F. Supp. 2d 830, 851 (S.D. Ohio 2002)). *See also H.C. Smith Invs., L.L.C. v. Outboard Marine Co.*, 377 F.3d 645, 652-53 (6th Cir. 2004) (suggesting this point though not expressing it outright). Consequently we can eliminate immediately the possibility of grounding this tort in any of the omissions alleged in paragraph 32 of the complaint. We can also eliminate claims based on subparagraphs 32.a and .h, because they fail to allege provision of false factual information. That leaves us with only the allegations regarding "illusory" credit enhancements (¶¶ 32.i-.j), but as explained above, the offering documents were not false in this regard. Count II will be dismissed.

## C

Count III alleges that the defendants violated two sections of Kentucky's Blue Sky Law, KRS 292.320 and 292.480. We address them in turn.

**1**

The first cited section prohibits fraudulent securities practices, but as a technical matter it can only be invoked as the basis of a private cause of action under the second, which provides for civil liability. *See Foster v. Ky. Farm Bureau Mut. Ins. Co.*, 189 S.W.3d 553, 557 (Ky. 2006) ("[W]here a statute both declares the unlawful act and specifies the civil remedy available, the aggrieved party is limited to the remedy provided by the statute." (*citing Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985))); *Stifel, Nicolaus & Co., Inc. v. May*, No. 3:02-CV-688-S, slip op. at 5 (W.D. Ky. Aug. 19, 2003) ("[N]o private right of action may be implied under § 292.320." (*citing Grzyb*, 700 S.W.2d at 401).). The question is perhaps academic—KRS 292.480(1) provides for civil liability against "[a]ny person, who [*inter alia*] offers or sells a security of violation of this chapter"—but we nonetheless think it important to set out precisely the basis for the discussion that follows.

So we ask whether Republic has adequately pleaded a violation of KRS 292.320, such that it might be able to recover under KRS 292.480. This statute is "virtually identical" to the federal securities fraud laws, and requires proof of six elements: (1) misrepresentation or omission of a material fact; (2) *scienter*; (3) a connection with the purchase or sale of a security; (4) reasonable reliance (or transaction causation); (5) economic loss; and (6) loss causation. *Brown v. Earthboard Sports USA, Inc.*, 481 F.3d 901, 917 (6th Cir. 2007) (*citing Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005)). The cause of action is subject to the heightened pleading requirements imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. 78u-4. *Booth v. Verity, Inc.*, 124 F.Supp.2d 452, 459-61 (W.D. Ky. 2000). In order to show *scienter*, the PSLRA demands that the complaint "shall, with respect to each act or omission alleged to violate

this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2); *Booth*, 124 F.Supp. 2d at 461. Specifically, the plaintiff is required to plead facts raising a strong inference of "an act so highly unreasonable and such an extreme departure from the standard of ordinary care as to present a danger of misleading the plaintiff to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Booth*, 124 F.Supp. 2d at 461-62 (*quoting In re MicroStrategy Inc. Secs. Litig.*, 115 F. Supp. 2d 620, 633 (E.D. Va. 2000)); *Hoffman v. Estabrook & Co.*, 587 F.2d 509, 517 (1st Cir. 1978). This form of recklessness "is a lesser form of intent rather than a greater degree of ordinary negligence"; simple negligence is not sufficient. *Booth*, 124 F.Supp. 2d at 461 (*citing In re Comshare, Inc. Secs. Litig.*, 183 F.3d 542, 550 n.7. (6th Cir. 1999)). The complaint, taken as a whole, must contain factual allegations sufficient at least to indicate either that the defendant made errors "so obvious that any reasonable man would have known of [them]" or that "red flags" existed that should have put defendants on notice that their statements or omissions were likely to cause harm. *Comshare*, 183 F.3d at 553. Whether the pleaded facts give rise to a "strong inference" must not be assessed "in a vacuum"; courts are required to take into account "plausible opposing inferences." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). A complaint will thus survive dismissal "only if a reasonable person would deem the inference of *scienter* cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324.

Once again, Republic has failed to plead a cause of action with respect to the allegations in subparagraphs 32.a ("reasonably safe investment products"), .b ("prudent underwriting standards"), .g (risk of loss was "unreasonably high"), and .h (Bear Stearns "intended to make a secondary

market"), because all four fail to allege a misrepresentation or omission of fact. The allegations in subparagraphs .d (lack of creditworthiness or examination thereof) and .f (predatory lending practices) fail with respect to the 2006 certificates because Republic could not reasonably have relied on any statements by Barney in light of the publicly available offering documents. S*ee Earthboard*, 481 F.3d at 921 (requiring reasonable reliance in a KRS 292.320(1) action). Those allegations will also be dismissed with respect to the 2003 certificates, because they were plainly filed outside the Blue Sky Law's three-year statute of limitations. KRS 292.480(5). Additionally, the claims in paragraphs .i and .j (credit enhancement) fail because Republic has admitted to not reading the offering documents prior to buying the securities, and therefore cannot have relied on them. (Subsection 320(1) applies only to purchases, and cannot be invoked on the theory that Republic held the securities in reliance on the basis of its post-purchase review of the prospectuses and prosupps.) The allegations in paragraphs 32.c and 32.e fail because, as discussed above, Bear Stearns disclosed its lending and valuation practices. As none of the individual elements survive, the whole of the KRS 292.320 claim will be dismissed.

**2**

KRS 292.480(1) provides a cause of action of its own, even absent a violation of some other provision of the Blue Sky Law. Proof of a claim under that section requires proof of three elements. The defendant must have (1) offered or sold a security; (2) by means of an untrue statement or omission concerning a material fact, (3) of which the buyer did not know. The offeror or seller has a defense (on which he bears the burden of proof) if he did not know and in the exercise of reasonable care could not have known of the untruth or omission. This cause of action parallels

Section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l(a)(2), and requires no proof of fraudulent mental state; consequently the PSLRA does not apply. *Booth*, 124 F. Supp. 2d at 463.

That said, we return to our analysis of Republic's individual claims. The allegations involving reasonableness, prudence, and intent to act in the future (Compl. ¶¶ 32.a, .b, .g, and .h) involve no statement or omission of fact, and again fail to constitute a cognizable cause of action. The allegations expressly relying on statements in the (unreviewed) offering documents (Compl. ¶¶ 32.i and .j) also fail, because subsection 480(1)'s cause of action applies only to sales and not to a subsequent decision to hold the security. The charges based on subparagraphs .c, .d, .e and .f will be dismissed both as to the 2003 certificates (because they are time-barred) and as to the 2006 certificates (because the offering documents disclosed the complained-of practices).

\* \* \*

For the reasons stated above, the defendants' motion to dismiss will be sustained in full. A separate order will effectuate this conclusion.